UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DARLENE CHRETIEN          :
                                 :
        v.                  :       C.A. No. 12-348S
                                 :
SEDGWICK CLAIMS MANAGEMENT  :
SERVICES, INC.             :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Plaintiff Darlene Chretien ("Plaintiff") commenced this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, challenging the denial of long-term disability ("LTD") benefits under a group plan established by her former employer Walgreens Company and administered by Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick").  (Document No. 1).  The parties have cross-moved for the entry of summary judgment under Fed. R. Civ. P. 56.  (Document Nos. 15 and 19).

These Motions have been referred to me for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR Cv 72) and a hearing was held on April 29, 2013.  For the reasons set forth herein, I recommend that Defendant's Motion for Summary Judgment (Document No. 15) be GRANTED and Plaintiff's Motion for Summary Judgment (Document No. 19) be DENIED.

**Facts**

The following facts come from Sedgwick's Local Rule Cv 56(a)(2) Statement of Undisputed Facts.  (Document No. 16)[1].  Plaintiff did not object to any of these facts other than to point out that

---

[1] Plaintiff also submitted a Statement of Undisputed Facts (Document No. 20) which are largely undisputed by Sedgwick (Document No. 23) and which have also been reviewed and considered by the Court.

Sedgwick paraphrased the operative language from the Plan in certain instances.  (Document No. 25).

Plaintiff was employed by Walgreens as a Store Manager during the time relevant to the Complaint.  Plaintiff last worked at Walgreens on September 18, 2008 and commenced on disability leave on September 22, 2008.  As a Walgreens employee, Plaintiff was a covered participant under a Long Term Disability Plan (the "LTD Plan"), which is part of the Walgreen Co. Income Protection Plan for Store Managers (the "IPP").  In addition to the LTD Plan, the IPP also provides short-term disability ("STD") benefits to covered and qualified participants. Sedgwick is the Third-Party Claim Administrator for the IPP.  While Sedgwick serves as the Claims Administrator for the IPP, Walgreens pays the full cost of any benefits paid.

The terms of the IPP are set forth in a Summary Plan Description ("SPD") which is disseminated to Plan participants including Plaintiff.  The SPD states that participants will not be paid disability benefits if they are "no longer totally or residually disabled as defined by this plan," among other criteria.  In defining "disability" in terms of awarding LTD benefits, the SPD states that for the first eighteen months of benefits, the LTD Plan considers whether the participant is able to earn more than 80% of pre-disability earnings at his/her own occupation in the local economy. Following the initial eighteen-month period, the LTD Plan considers whether the participant can earn more than 60% of his/her pre-disability earnings at any gainful occupation for which the participant is reasonably qualified in the local economy.  The SPD describes the IPP's limitations on certain conditions, including psychiatric conditions.  In particular, the SPD states that "[b]enefits are limited to a total of 24 months during your lifetime if you are disabled due to mental or nervous

-2-

disorders or diseases, unless the disability results from: schizophrenia, bipolar disorder, dementia or organic brain disease."

The SPD sets forth the procedures for filing a claim and appealing a denied claim. It also explains the procedure for Sedgwick's review of claims.  The IPP grants the Claim Administrator and/or Plan Administrator the discretionary authority to determine eligibility for benefits and construe the terms of the Plan.  At all times relevant to the Complaint, the Plan Administrator was the Director of Risk Management and Accounting at Walgreen Co.  The Plan Administrator was not involved in the determination of Plaintiff's claim.  The SPD states that "[t]he Claim Administrator and the Plan Administrator will apply their judgment to claims and appeals in a manner that they deem to be consistent with the Plan and any rules, regulations or prior interpretations of the Plan." The SPD states that "[t]he authority granted to the Claim Administrator and the Plan Administrator to construe and interpret the Plan and make benefit determinations, including claims and appeals determinations, shall be exercised by them (or persons acting under their supervision) as they deem appropriate in their sole discretion."  The SPD informs participants that "[b]enefits under this plan will be paid or provided to you only if the Claim Administrator or the Plan Administrator, as the case may be, decides in its discretion that you are entitled to them."

On September 22, 2008, Plaintiff became disabled.   Plaintiff made a claim to Sedgwick pursuant to the IPP and began receiving STD benefits on September 29, 2008.  Plaintiff submitted a claim for LTD benefits in May 2009.   In her application for benefits, Plaintiff described her disability as fibromyalgia, fatigue and migraine headaches.  In support of her claim for benefits under the LTD Plan, Plaintiff submitted medical records from her treating health care providers, Dr.

John Slattery, Brenda Bullinger, L.C.S.W.; Amy Bruno, R.N.P.; Dr. Keith Brecher, and Dr. Gary L'Europa. Sedgwick referred Plaintiff's medical documentation for an independent medical review by Dr. Robert N. Polsky, who is Board Certified in Psychiatry. Dr. Polsky submitted a report to Sedgwick. Sedgwick also referred Plaintiff's medical documentation for an independent medical review by Dr. Dennis Payne, who is Board Certified in Rheumatology and Internal Medicine. Dr. Payne submitted a report to Sedgwick. Sedgwick asked Plaintiff's health care providers to state whether or not they agreed with the opinions of Drs. Polsky and Payne. Because Plaintiff's medical provider disagreed with the findings of Drs. Polsky and Payne, Sedgwick referred Plaintiff's medical documentation for another independent medical review by Dr. Lawrence Albers, who is Board Certified in Psychiatry. Dr. Albers submitted a report to Sedgwick.

Plaintiff was approved for benefits under the LTD Plan. She received benefits pursuant to the LTD Plan from March 31, 2009 through September 22, 2010. On or around March 11, 2010, Sedgwick sent Plaintiff a letter informing her that she was approved to receive LTD benefits through June 30, 2010. The letter also informed Plaintiff that if she wanted to continue receiving LTD benefits past that date, she must provide certain specified information before June 23, 2010. On or around May 28, 2010, Sedgwick sent Plaintiff a letter informing her that her disability benefits in accordance with the "Own Occupation" part of the quoted definition of total disability under the LTD Plan would end on September 21, 2010. The letter also informed Plaintiff that in order to receive LTD benefits pursuant to the "Any Occupation" part of the quoted definition of total disability under the LTD Plan, she would need to complete and submit certain forms on or before June 28, 2010. On or around June 14, 2010, Plaintiff completed and submitted the Walgreens' Long

Term Disability Questionnaire and the Walgreens' Long Term Disability Plan Employee Application for Benefits.  On or around June 14, 2010, Plaintiff completed and submitted an "Authorization for Claim Evaluation & Administration" to Sedgwick.  On or around June 25, 2010, Sedgwick sent a letter to Plaintiff informing her that she was approved to receive LTD benefits through September 21, 2010. The letter advised Plaintiff that she needed to submit certain specific documentation for Sedgwick's consideration prior to August 21, 2010, if she wanted to continue her LTD benefits past September 21, 2010.  On or around June 29, 2010, Amy Bruno a Registered Nurse Practitioner at the office of Dr. Gary L'Europa completed a Physical Capacities Evaluation on behalf of Plaintiff and submitted it to Sedgwick.  On or around June 29, 2010, Sedgwick requested that Dr. Keith Brecher complete a Physical Capacities Evaluation on behalf of Plaintiff. Dr. Brecher responded on July 1, 2010, that he did "not wish to complete the evaluation as he hasn't kept the patient out of work."  On September 8, 2010, in response to a request for information from Sedgwick, Dr. Brecher informed Sedgwick that he had not seen Plaintiff between June 1, 2010 and September 8, 2010.  On September 8, 2010, Sedgwick requested that Dr. John Slattery complete a Physical Capacities Evaluation on Plaintiff's behalf and also submit any office visit notes and test results dated June 1, 2010 to the present.  Dr. Slattery responded on September 10, 2010 that he had "no data within the past year to complete the [physical capacity] evaluation" requested by Sedgwick. He further stated that "[i]f required then patient will need to be referred to a physical therapist to complete the evaluation."  Although Dr. Slattery could not provide all of the information requested by Sedgwick, on September 10, 2010, his office provided Sedgwick with an examination note for Plaintiff dated August 19, 2010.

In September 2010, Sedgwick referred Plaintiff's claim to an independent medical examiner, Dr. Philip Jordan Marion, for review.  Dr. Marion provided Sedgwick with a report detailing his findings.  In the referral cover sheet, Sedgwick states that Plaintiff is a Walgreens' store manager with "fibro" listed as the diagnosis/reason for claim.  Dr. Marion reviewed a substantial amount of medical records submitted to him by Sedgwick.  See Document No. 16 at p. 7.  Dr. Marion's report states that Plaintiff "worked for Walgreens as a store manager."  Dr. Marion placed two calls to Dr. Brecher's office on September 16, 2010 and September 20, 2010.  Dr. Brecher did not return Dr. Marion's calls.  Dr. Marion's review of Plaintiff's medical records provided that the "condition indicated by the treating provider affecting the employee's ability to work is her chronic whole body musculoskeletal pain complaints, based on an underlying diagnosis of fibromyalgia."  Dr. Marion found that "[t]here was no specific objective medical information in the medical records supporting the employee's complete inability to work... [t]he patient remains otherwise functionally independent, fully ambulatory, and not restricted from driving a motor vehicle."  Dr. Marion's report states that, "[b]ased on the enclosed clinical information available for review, the employee is functionally capable of performing any job as of 9/22/10."  Dr. Marion attested to the fact that there was no conflict of interest with his review of Plaintiff's condition and that his compensation is not dependent on the specific outcome of his review.

By letter dated September 21, 2010, Sedgwick notified Plaintiff that she was no longer qualified for LTD benefits under the Plan. It also informed her that her LTD benefits would be terminated effective September 22, 2010.  The letter quoted two sections of the LTD Plan: the definition of "disability" under the LTD Plan and a portion of the section entitled "Psychiatric

Conditions, Alcohol, Drug, Substance Abuse or Dependency." It informed Plaintiff that "Dr. Slattery reported that [she] would need to be referred to a physical therapist for restrictions and limitations." It also informed Plaintiff that Dr. Brecher's office indicated that the doctor "did not wish to provide restrictions and limitations" and that copies of her medical records were provided to Physician Advisor, Dr. Marion, "in order to assess [her] restrictions and limitations." It went on to relay Dr. Marion's findings. It informed Plaintiff that "[t]here is no medical documentation to support restrictions and limitations that would preclude [her] ability to perform any occupation based on a physical diagnosis beyond September 21, 2010." Finally, it advised Plaintiff how to appeal the determination, enclosed an Appeal Form and informed Plaintiff that she had a right to bring a civil action under Section 502(a) of ERISA if her claim for benefits was denied after there had been full exhaustion of her appeal rights under the IPP, which includes both a first-level and a second-level appeal.

On or about January 29, 2011, Plaintiff appealed Sedgwick's determination of September 22, 2010. In her letter, Plaintiff states that "[the] assessment was based on the erroneous assumption that [she is] a pharmacist" as opposed to a Retail Store Manager.[2] Plaintiff also states that the diagnosis for which her doctor "wrote [her] out of work" was fibromyalgia, not depression. Along with her appeal form and letter, Plaintiff submitted to Sedgwick a "Functional Capacity Evaluation" dated November 1, 2010 from Ali Rosenblum, MS, PT, CWCE, at the office of Dr. Slattery, with an examination date of October 27, 2010. The Evaluation states that "[o]verall examination reveals

---

[2] While it is true that the initial denial dated September 21, 2010 erroneously identified Plaintiff as a Pharmacist, the record as a whole correctly identifies her former position as Store Manager. See, e.g., Document No. 16-3 at pp. 43-45. Further, this single error is not material to Sedgwick's overall evaluation of Plaintiff's LTD claim, and Plaintiff does not now argue that it rendered the decision arbitrary, capricious or an abuse of discretion.

various pain complaints throughout her body.  Overall strength, sensation and joint stability intact. Neurologic examination is intact."  The Evaluation also states that "[o]verall results of physical testing revealed that [Plaintiff] did not give forth high levels of effort throughout the course of testing."  It revealed that Plaintiff had a "slightly" higher demonstrated ability compared to her perceived ability.

On or around March 8, 2011, Sedgwick informed Plaintiff that it received her appeal request and that she would receive a written response by April 21, 2011.  On March 24, 2011, Plaintiff submitted additional documentation to Sedgwick from her medical providers.  In April 2011, Sedgwick Appeals Specialist Regina Crenshaw completed the External Physician Advisor Referral Form for Plaintiff's appeal, seeking a "PM&R & Rheumatology Specialty Review."  The External Physician Advisor Form identified Plaintiff's job title as "Store Manager" and listed her diagnoses as "fibromyalgia, restless leg syndrome, and chronic headaches."

On April 4, 2011, Dr. Jamie Lee Lewis provided a report to Sedgwick regarding his review of Plaintiff's medical file.  Dr. Lewis is Board Certified in Physical Medicine and Rehabilitation and in Pain Medicine.  Dr. Lewis  reviewed the medical records provided by Regina Crenshaw, including the records reviewed by Dr. Marion, the November 2011 report from Ms. Rosenblum, as well as the records provided by Plaintiff on March 24, 2011.  Dr. Lewis called Dr. Slattery's office on March 30, 2011 and March 31, 2011 leaving a detailed message each time.  Dr. Slattery did not return the call.  Dr. Lewis called Dr. Whooley's office on March 30, 2011 and March 31, 2011 leaving a detailed message each time. Dr. Whooley did not return the call.  Dr. Lewis called Dr. L'Europa's office on March 30, 2011 and March 31, 2011 leaving a detailed message each time.

Dr. L'Europa did not return the call.  Dr. Lewis spoke with Amy Bruno, RNP, on March 30, 2011. Ms. Bruno told Dr. Lewis that Plaintiff is not disabled from any occupation and that she feels Plaintiff has functional limitations as a result of subjective pain.  Ms. Bruno described restrictions on lifting but stated Plaintiff could perform sedentary work.  Ms. Bruno recommended reduced work hours of four hours per day.  Based on his review of Plaintiff's medical records and his conversation with Ms. Bruno, Dr. Lewis concluded that "from a physical medicine and rehabilitation perspective the [Plaintiff] is not disabled from any occupation."  Dr. Lewis stated that the "findings contained in the medical record would not impact the employee's ability to function in any occupation."  Dr. Lewis further stated that "[w]eakness was identified by physical therapist. This was not neurogenic in nature. Multiple physicians' evaluations have routinely demonstrated full strength. Further functional capacity evaluation demonstrates the patient has self-limiting behavior and is not giving maximal effort."  Dr. Lewis attested to the fact that there was no conflict of interest with his review of Plaintiff's medical file for Sedgwick and attested that his compensation is not dependent on the specific outcome of his review.

On April 4, 2011, Patricia A. Fraser, M.D. provided a report to Sedgwick regarding her review of Plaintiff's medical file from a rheumatology perspective.  Dr. Fraser is Board Certified in Rheumatology and Internal Medicine.  Dr. Fraser reviewed the same set of medical records provided to Dr. Lewis.  Dr. Fraser conferred with Dr. Slattery on April 1, 2011.  Dr. Slattery told Dr. Lewis that he felt Plaintiff's "constellation of medical problems and physical activity intolerances render [Plaintiff] disabled for at least two years."  Dr. Fraser conferred with Dr. Rafal on March 31, 2011. Dr. Rafal told Dr. Lewis that although Plaintiff rated her pain intensity as 8/10,

she did not complete physical therapy and other recommendations.   Dr. Fraser contacted Dr.

Brecher's office on two occasions – March 31, 2011 and April 1, 2011.  On each occasion, she asked

that Dr. Brecher call her back.  Dr. Brecher never returned Dr. Fraser's call.  Dr. Fraser also

reviewed Dr. Marion's report of September 20, 2010.  Dr. Fraser stated in her report that "there are

no physical findings provided in the medical record to support physical functional impairment for

the period 9/22/10 to the RTW for any job."  Dr. Fraser reported that Plaintiff's "sensory, motor,

coordination and gait exams were all within normal limits." She also stated that Plaintiff "has well

documented trigger point tenderness consistent with fibromyalgia. Trigger point tenderness would

not impact [Plaintiff's] ability to function in any occupation."  Based on her review of Plaintiff's

medical information provided in the records and her calls with Plaintiff's health care providers, Dr.

Fraser concluded that Plaintiff "is not disabled."  Dr. Fraser attested to the fact that there was no

conflict of interest with her review of Plaintiff's medical file for Sedgwick, and attested that her

compensation is not dependent on the specific outcome of her review.

On April 21, 2011, Sedgwick sent a letter to Plaintiff notifying her that her request for review

of her denied claim had been completed and that Sedgwick decided to uphold the denial as Plaintiff

"d[id] not qualify for continuing benefits for the period from September 22, 2010 to the present."

The letter informed Plaintiff of the medical records that were reviewed by Sedgwick.  The letter

informed Plaintiff that her ineligibility for benefits was determined under the following Plan

provisions: "What it Means to be Disabled"; "Long-Term Disability" and "Discontinuation of

Benefits."   It also informed Plaintiff that, based on the review by Drs. Lewis and Fraser, the

Appeals Unit determined that she did not meet the Plan's definition of disability.  Finally, the letter informed Plaintiff of the process of filing a second appeal.

On July 9, 2011, Plaintiff again appealed the determination.  She submitted to Sedgwick an Appeal Form, a letter and medical records from Dr. Stuart T. Schwartz on that date.  On July 27, 2011, Stephanie Jackson, Appeals Specialist for Sedgwick, sent Plaintiff a letter informing her that she had made several attempts to contact Plaintiff by telephone without success and asked Plaintiff to return Ms. Jackson's call.  On September 1, 2011, Sedgwick sent a letter to Plaintiff informing her that it needed an additional forty-five days to review her claim, and that it would provide her with a written response no later than October 16, 2011.  In September 2011, Ms. Jackson completed the External Physician Advisor Referral Form for Plaintiff's appeal, seeking a "Psychiatry and Rheumatology" review.

On September 20, 2011, Dr. Paul Giannandrea provided a report to Sedgwick regarding his review of Plaintiff's medical file.  Dr. Giannandrea is Board Certified in Psychiatry and Neurology.  Dr. Giannandrea reviewed the medical records reviewed by Drs. Marion, Lewis and Fraser, as well as the records provided by Plaintiff including those from Dr. Schwartz.  Dr. Giannandrea also reviewed the reports of Drs. Marion, Lewis and Fraser.  Dr. Giannandrea placed three calls to Dr. Slattery on September 14, 2011, September 15, 2011 and September 19, 2011, and left detailed messages. Dr. Slattery did not return his calls.  Dr. Giannandrea spoke with Sarah Delvecchio at the office of Amy Bruno on September 15, 2011, who read the record and indicated that Plaintiff was last seen by Ms. Bruno on June 22, 2011.  Dr. Giannandrea's report refers to Plaintiff as a "drug store manager" with diagnoses of "depression and fibromyalgia."   After thoroughly reviewing

Plaintiff's medical records, Dr. Giannandrea concluded that from a psychiatric perspective, Plaintiff "is not disabled from the ability to perform any occupation for which she may be qualified by education, training or experience." Dr. Giannandrea's report states that "there is no clear objective indication of cognitive impairment, self-harm risk, psychosis or major vegetative symptoms that can be separated from her musculoskeletal problems. Thus, according to DSM diagnostic criteria, one cannot separate her mood symptoms from her pain condition and her fibromyalgia and therefore, proper diagnosis cannot be made per lack of response to antidepressants. Mood related to chronic medical problems cannot constitute an independent psychiatric disorder that would be disabling." The report went on to state that "the medical documentation provided does not adequately support an independent psychiatric condition that would be considered in itself disabling during the time period in question." Dr. Giannandrea attested to the fact that there was no conflict of interest with his review of Plaintiff's medical file for Sedgwick, and attested that his compensation is not dependent on the specific outcome of his review.

On September 20, 2011, Dr. David Knapp provided a report to Sedgwick regarding his review of Plaintiff's medical file. Dr. Knapp is Board Certified in Internal Medicine and Rheumatology. Dr. Knapp reviewed the same set of medical records provided to Dr. Giannandrea. Dr. Knapp spoke with Dr. Slattery on September 19, 2011. Dr. Slattery told Dr. Knapp that Plaintiff had fibromyalgia that prevented her from returning to her previous job, and he also noted that he did not feel that Plaintiff could perform any productive full-time work in an acceptable manner due to her subjective complaints. He noted that his last visit with Plaintiff was in April 2011. Dr. Knapp spoke with Dr. Schwartz on September 15, 2011. Dr. Schwartz told Dr. Knapp that there were no

objective rheumatologic findings that supported restrictions and limitations.  He also stated that he only saw Plaintiff once and that he did not review any surveillance test.  Dr. Knapp reviewed and noted the job description for Walgreens' Store Manager.  Based on his review of Plaintiff's medical records and his conversations with her health care providers, Dr. Knapp concluded from a rheumatology perspective that "no measurable rheumatologic impairments are documented that would translate into restrictions and limitations which would disable [Plaintiff] from performing any occupation."  Dr. Knapp stated that "[f]ibromyalgia is not a condition of required work-related restrictions in the absence of clinically significant physical limitations as determined by physical examination, functional assessment, imaging, and/or laboratory testing."  On October 5, 2011, Sedgwick sent a letter to Plaintiff stating that it continued to uphold its prior determination terminating Plaintiff's claim for LTD benefits.

**Standard of Review**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law."  Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists.  Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing,

"[t]he non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial." Okpoko v. Heinauer, 796 F. Supp. 2d 305, 322-323 (D.R.I. 2011). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

The standard of review utilized by "the district court in [an] ERISA case differs in one important aspect from the review in an ordinary summary judgment case." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005). Generally, the Court must draw all reasonable inferences in the light most favorable to the nonmoving party. See Cont'l Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991). "However, in an ERISA benefit-denial context, 'the district court sits more as an appellate tribunal than as a trial court.'" Cusson v. Liberty Life Assurance Co., 592 F.3d 215, 224 (1st Cir. 2010) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002)). "'Summary Judgment is simply a vehicle for deciding the issue,' and consequently, 'the non-moving party is not entitled to the usual inferences in its favor.'" Id. (quoting Orndorf, 404 F.3d at 517).

**Discussion**

Under ERISA, a plan administrator's denial of benefits is generally reviewed de novo by the Court. Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008). When an ERISA plan gives

-14-

the administrator discretion to determine eligibility for benefits, as in this case,[3] the Court must uphold the decision unless it is "arbitrary, capricious, or an abuse of discretion." Cusson, 592 F.3d at 224 (citing Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004)).   Under this standard, the Court reviews whether the benefits decision is "reasoned and supported by substantial evidence." Medina v. Metro. Life Ins. Co., 588 F.3d 41, 45-46 (1st Cir. 2009). "Put differently, [the Court] will uphold [the] decision to deny disability benefits 'if there is any reasonable basis for it.'" Id. (quoting Wallace v. Johnson & Johnson, 585 F.3d 11, 14-15 (1st Cir. 2009)).   In this case, both parties apply the "arbitrary and capricious" standard of review in making their respective arguments, and Plaintiff does not argue for application of a heightened "structural conflict of interest" standard of review.  See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 115-117 (2008).

## A.     The LTD Policy

Plaintiff first argues that Sedgwick failed to apply the correct standard in reviewing her LTD application.  In particular, Plaintiff contends that Sedgwick misapplied the terms of the LTD plan by failing to determine if she is able to earn more than 60% of her indexed pre-disability earnings from any employer in her local economy at any gainful occupation for which she is reasonably qualified. (Document No. 19 at pp. 10-11).  Sedgwick disputes Plaintiff's claim and counters that the earnings analysis is irrelevant in this case because the weight of the medical evidence supports a preliminary finding that Plaintiff was "not disabled from any occupation." (Document No. 22 at p. 8).

---

[3]  The IPP provides that "[t]he authority granted to the Claim Administrator and the Plan Administrator to construe and interpret the Plan and make benefit determinations, including claims and appeals determinations, shall be exercised by them (or persons acting under their supervision) as they deem appropriate in their sole discretion." (Document No. 16-5 at p. 3).

It is undisputed that Plaintiff was approved for and received STD benefits from September 29, 2008 through March 30, 2009 and LTD benefits from March 31, 2009 through September 22, 2010.  Because Plaintiff received benefits under the IPP for a total of twenty-four months, she is subject to the plan limitation applicable to psychiatric conditions.[4]  Specifically, the IPP provides that "[b]enefits are limited to a total of 24 months during your lifetime if you are disabled due to mental or nervous disorders or diseases, unless the disability results from schizophrenia; bipolar disorder; dementia; or organic brain disease."  Thus, in order for Plaintiff to have continuing eligibility for LTD benefits after September 22, 2010, she would have to meet the IPP's definition of long-term disability for an illness or injury which is not subject to the twenty-four month plan limitation for psychiatric conditions.

The IPP contains a two-pronged definition of long-term disability.  First, it provides that a participant is subject to a long-term disability if, "due to sickness, pregnancy or accidental injury, [he/she is] receiving appropriate care and treatment from a doctor on a continuing basis and [he/she is] prevented from performing one or more of the essential duties of [his/her] occupation."  Second, after collecting LTD benefits for eighteen months, as Plaintiff did in this case, the participant must also be "unable to earn more than 60% of [his/her] indexed pre-disability earnings from any employer in [his/her] local economy at any gainful occupation for which [he/she is] reasonably qualified, taking into account [his/her] training, education, experience, and pre-disability earnings."

---

[4]  In a letter dated September 21, 2010, Sedgwick advised Plaintiff that her "claim was previously approved through September 21, 2010 based on a diagnosis of depression."  (Document No. 16-2 at p. 7).

Based on the clear and unambiguous language of the IPP, Sedgwick was only required to conduct the earnings analysis required by the second prong if Plaintiff met the disability definition contained in the first prong.  On September 21, 2010, Sedgwick advised Plaintiff as follows:

> As of September 21, 2010, you have received 24 months of long-term disability benefits based on a psychiatric diagnosis.  There is no medical documentation to support restrictions and limitations that would preclude your ability to perform any occupation based on a physical diagnosis beyond September 21, 2010.  Your claim for Long-term disability benefits has been terminated effective September 22, 2010.

(Document No. 16-2 at p. 7).  Accordingly, Sedgwick did not misinterpret or misapply the LTD definition as claimed by Plaintiff.  Thus, the remaining issue is whether Sedgwick's application of that definition to the medical evidence in this case was arbitrary, capricious or an abuse of its discretion under the IPP.

### B.    The Denial

Sedgwick contends that its review of Plaintiff's LTD application was "fair and reasonable" based on the medical evidence and that the "overwhelming majority of the medical evidence in the administrative record, including the evidence submitted by Plaintiff's own treating physicians, established that Plaintiff did not meet the LTD Plan's definition of 'disabled' that would render her eligible for the continuance of LTD benefits." (Document No. 15-1 at pp. 15-18).  Plaintiff counters that the denial was arbitrary and capricious because the record includes certain medical evidence supporting a finding of disability.  (Document No. 19 at pp. 9-10).

As previously discussed, the relevant standard in an ERISA case such as this "asks whether a plan administrator's determination 'is plausible in light of the record as a whole, or, put another

way, whether the decision is supported by substantial evidence in the record." Colby v. Union Sec. Ins. Co., 705 F.3d 58, 61 (1st Cir. 2013) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 17 (1st Cir. 2002) (emphasis added)).   "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." Gannon, 360 F.3d at 213.

Plaintiff bases her argument on medical evidence from three of her treatment providers – a nurse practitioner, a physical therapist and a physician.  First, she points to a Physical Capacities Evaluation completed by Amy Bruno, RNP, on June 29, 2010.  (Document No. 16-1 at p. 26).  In it, Ms. Bruno opined that Plaintiff was only capable of working up to four hours per day in a limited capacity and that such restrictions were permanent.  Id.  However, when Dr. Lewis (one of Sedgwick's reviewing physicians) spoke with Ms. Bruno on March 30, 2011, she reportedly indicated to Dr. Lewis that Plaintiff "is not disabled from any occupation" and that her functional limitations are "a result of subjective pain."  (Document No. 16-3 at p. 6).  Ms. Bruno also told Dr. Lewis that Plaintiff could do sedentary work but she "recommended" reduced work hours.  Id. Based on his review of the medical evidence including his conversation with Ms. Bruno, Dr. Lewis concluded that "from a physical medicine and rehabilitation perspective the [Plaintiff] is not disabled from any occupation for the dates in question."  (Document No. 16-3 at p. 11).

Second, Plaintiff relies on a Functional Capacity Evaluation prepared by her physical therapist, Ms. Ali Rosenblum, MS PT CWCE, on November 1, 2010.  (Document No. 16-1 at pp. 38-44).  Ms. Rosenblum opined that Plaintiff "would likely present poorly in a potential employment situation" and did so "[b]ased on her performance during testing."  Id. at p. 42.  However, she also

reported that "[o]verall results of physical effort testing reveal [Plaintiff] did not give forth high levels of effort throughout the course of testing" and Plaintiff's "perception of function is slightly lower than her demonstrated level of activity." Id. at pp. 40-41. She observed that Plaintiff had a "high perception of disability with respect to her pain" and that her "low levels of effort provided during the course of testing" may not reflect "physical maximums." Id. at p. 41. Further, Ms. Rosenblum indicated that although "examination reveals various pain complaints throughout her body," Plaintiff's overall strength, sensation, joint stability and neurologic examination were all "intact." Id. at p. 39. Finally, Ms. Rosenblum reported that Plaintiff "demonstrated functional abilities at the sedentary work category" but predicted that "she would be unlikely to maintain this level daily, and in a work situation." Id. at p. 42.

Third, Plaintiff directs the Court to information provided by Dr. Slattery, a treating physician. In particular, she identifies comments made by Dr. Slattery on April 11, 2011 to Dr. Fraser (one of Sedgwick's reviewing physicians) and on September 19, 2011 to Dr. Knapp (another reviewing physician). (Document No. 16-3 at pp. 14, 39). Dr. Slattery opined in both conversations that Plaintiff was disabled and told Dr. Knapp that Plaintiff's "fibromyalgia...prevented her from returning to her previous job, and...that he did not feel [Plaintiff] was able to perform any productive full-time work in an acceptable manner due to her subjective complaints." Id. Dr. Slattery told Dr. Knapp that he had not seen Plaintiff in over five months. Id. In his report, Dr. Lewis observed that Dr. Slattery's treatment notes were not accompanied by any physical examination and that the "[m]ost recent note on 03/24/11 contains no significant physical examination abnormalities."

(Document No. 16-3 at p. 7).  Similarly, in her report, Dr. Knapp indicated that the examinations listed in Dr. Slattery's records were "unremarkable." Id. at p. 41.

While the medical evidence culled out by Plaintiff is somewhat supportive of her disability claim, it is not conclusive, and also, it must be reviewed in the context of the entirety of the medical record considered by Sedgwick.  It is undisputed that the record contains conflicting medical evidence and that Sedgwick's reviewing physicians found that the evidence as a whole did not establish that Plaintiff was functionally disabled and eligible for LTD.  As previously noted, "the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." Gannon, 360 F.3d at 213.  Further, there is nothing in the LTD Plan or ERISA which requires a plan administrator to accord greater weight to the opinions of treating physicians than to those of consulting physicians.  See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

For instance, on June 29, 2010, Sedgwick asked Dr. Brecher, a treating neurologist, to complete a Physical Capacities Evaluation of Plaintiff, and he declined indicating that "he hasn't kept the patient out of work."  (Document No. 16-1 at p. 27).  Dr. Marion, a consulting physician, reviewed treatment records from Dr. Brecher for the period September 3, 2008 to May 28, 2010. Id. at p. 32.  Although Dr. Marion noted that Plaintiff was seen by Dr. Brecher for chronic pain complaints, he observed that Plaintiff's neurological exam was documented as normal, as well as "[a]dditional diagnostic studies including electrodiagnostic evaluation."  Id. at p. 33.  Based on his review, Dr. Marion found "no specific objective medical information in the medical records supporting [Plaintiff's] complete inability to work" and noted that Plaintiff was "functionally independent, fully ambulatory, and not restricted from driving a motor vehicle."  Id. at p. 34.  Dr.

Fraser, another consulting physician, reviewed records from Dr. Rafal, a treating physician specializing in pain management, which "demonstrated trigger point tenderness and normal muscle strength and joint range of motion." (Document No. 16-3 at p. 16). Dr. Fraser also spoke with Dr. Rafal on March 31, 2011 who indicated that Plaintiff's reported pain intensity was 8/10 but that she "did not complete physical therapy and other recommendations." Id. at p. 14. Dr. Fraser found "no physical findings provided in the medical record to support physical functional impairment" and that, although Plaintiff "has well documented trigger point tenderness consistent with fibromyalgia, [it] would not impact [Plaintiff's] ability to function in any occupation." Id. at p. 16. On September 15, 2011, Dr. Knapp, a consulting physician, spoke with Dr. Schwartz, a treating rheumatologist, who indicated that "there were no objective rheumatologic findings that supported restrictions and limitations." Id. at p. 39. Based on his review of the medical records, Dr. Knapp concluded that "no measurable rheumatologic impairments are documented that would translate into restrictions and limitations which would disable [Plaintiff] from performing any occupation." Id. at p. 45. He also observed that "[f]ibromyalgia is not a condition of required work-related restrictions in the absence of clinically significant physical limitations as determined by physical examination, functional assessment, imaging, and/or laboratory testing." Id. at p. 46.

Here, there is ample medical evidence in the record which is "reasonably sufficient" to support a non-disability finding, i.e., the decision is supported by "substantial evidence." See Gannon, 360 F.3d at 213. Plaintiff has not shown that Sedgwick's decision denying ongoing LTD benefits to her was arbitrary, capricious or an abuse of its discretion to interpret the Plan and

determine eligibility for benefits.  Id.  ("the administrator's decision must be upheld if it is reasoned and supported by substantial evidence").  Accordingly, the decision must be upheld.

**Conclusion**

For the foregoing reasons, I recommend that Defendant's Motion for Summary Judgment (Document No. 15) be GRANTED and Plaintiff's Motion for Summary Judgment (Document No. 19) be DENIED.  I further recommend that the Court enter final judgment in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 25, 2013